No. 87-158

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

RAYLYNN LAUDERDALE,

    Claimant and Respondent,

    -vs-

MONTANA DEPARTMENT OF
AGRICULTURE,

    Employer,

    and

STATE COMPENSATION INSURANCE FUND,

    Defendant and Appellant.

APPEAL FROM:   The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hughes, Kellner, Sullivan & Alke; Thomas E. Martello,
        Helena, Montana

    For Respondent:

        Utick & Grosfield; Norman Grosfield, Helena, Montana

Submitted on Briefs:  Sept. 10, 1987

Decided:  November 19, 1987

Filed NOV 1 1987

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The State Compensation Insurance Fund (State Fund) appeals the decision of the Workers' Compensation Court awarding Ms. Lauderdale 500 weeks of permanent partial disability benefits in a lump sum. We affirm.

The issues are:

1. Did the Workers' Compensation Court err in determining that Ms. Lauderdale's headaches were related to her automobile accident?

2. Did the court err in determining that Ms. Lauderdale suffered a loss of earning capacity entitling her to 500 weeks of permanent partial disability benefits?

3. Did the court err in awarding Ms. Lauderdale a lump sum payment of benefits for her proposed business venture?

From August 1983 to July 1986, Raylynn Lauderdale was employed as an administrative assistant for the Montana Department of Agriculture. Her duties originally involved public relations, but she was later given administrative duties as well. In January 1985 Ms. Lauderdale's car struck a deer while she was driving home to Helena from a work-related meeting in Bozeman. She was able to continue driving home, and saw her doctor the next morning. He took X-rays of her neck, but the X-rays did not disclose any evidence of injury.

Ms. Lauderdale testified that approximately two or three months after the accident, she started to suffer from extreme headaches which were aggravated by leaning over her desk at work. She again sought medical help, first from an acupuncturist and her physician, and later from a physical therapist and a neurologist. She took two months off work in an attempt to correct her headache problem, but ultimately resigned her position in July 1986.

2

Ms. Lauderdale filed a petition asking the Workers' Compensation Court for 500 weeks of permanent partial disability benefits to be paid in a lump sum. She proposes to start her own business of professionally planning special events. At the hearing on her petition, the State Fund introduced the deposition testimony of a neurologist who has examined Ms. Lauderdale and who testified that it was improbable that Ms. Lauderdale's headaches were related to her accident. Ms. Lauderdale's physician testified by deposition that the headaches did result from the accident. The State Fund also presented testimony that Ms. Lauderdale had failed to apply for a job for which she was qualified and physically able, and which would pay as well as the job she left. It then presented expert testimony that Ms. Lauderdale's proposed business is too risky a venture. Ms. Lauderdale presented an expert who supported her business proposal.

The Workers' Compensation Court found for Ms. Lauderdale and gave her a 500 week lump sum award. The State Fund appeals.

I

Did the Workers' Compensation Court err in determining that Ms. Lauderdale's headaches were related to her automobile accident?

This Court's general standard of review of decisions of the Workers' Compensation Court is whether substantial evidence supports the lower court's findings and conclusions. Perry v. Tomahawk Transp. (Mont. 1987), 735 P.2d 308, 310, 44 St.Rep. 686, 688. Where medical testimony is entered solely through depositions, this Court may determine the weight to be given the evidence. Lamb v. Missoula Imports, Inc. (Mont. 1984), 684 P.2d 498, 499-500, 41 St.Rep. 1414, 1416. The expert testimony on the etiology of Ms. Lauderdale's headaches consisted of depositions of two physicians whose

3

opinions conflict. The State Fund argues that the deposition opinion of the neurologist should have been given greater weight than the deposition opinion of Ms. Lauderdale's treating physician.

Dr. Dwight Hiesterman was Ms. Lauderdale's treating physician. He testified by deposition that he first saw her for her headaches three months after her automobile accident. He prescribed medication, an exercise program, and physical therapy over the course of his treatment. He also referred her to the neurologist whose opinion is discussed below. Dr. Hiesterman testified by deposition that he concluded Ms. Lauderdale's headaches were caused by chronic cervical strain which is the result of her work-related automobile accident. His notes indicate that "it is felt by the orthopedist and the osteopath that probably her symptoms began in relationship to the trauma from an automobile accident some time ago. I certainly concur with that."

Dr. Stephen Johnson, the Missoula neurologist to whom Dr. Hiesterman referred Ms. Lauderdale, testified by deposition that he had examined Ms. Lauderdale once, for approximately thirty minutes. His conclusion was that "I have trouble relating something that began several months after the accident to the accident itself." He also stated, though, that:

> I would have a little easier time relating . . . radiculopathy [disease of the spinal nerve roots] to the accident instead of headaches, because things can happen immediately to a disk and then it gets out of place after some delay, so that is possible. But again, I don't have a good way, since I don't have--didn't have an examination to review and I wasn't able to examine her immediately, to know what was going on with that reflex before the accident or right afterwards or even--I didn't have any follow-up after I saw her, even though I did write to Dr. Hiesterman and said I

think this is going to be a difficult management problem. I would be happy to try and help out some more if you would like. We're talking about one point in time that I saw her and it's hard for me to make, you know, big judgments on that. I would like to see somebody several times to get a better view of things for that matter.

Dr. Johnson diagnosed Ms. Lauderdale's problems as migraine headaches.

In its findings and conclusions, the Workers' Compensation Court quoted portions of the depositions of both physicians. It concluded that:

> Although Dr. Johnson may, by education and specialization, be slightly more qualified to render an opinion as to claimant's condition, given the fact that Dr. Hiesterman is claimant's treating physician and relied not only on his own professional opinion but consulted with several other professionals, the Court finds greater weight in Dr. Hiesterman's finding. Claimant's present condition is the result of her industrial accident and her present condition prevented her from working at her job with the Department of Agriculture or any such similar desk-bound position.

It is clear from the lower court's findings and conclusions that the court carefully reviewed the deposition testimony of both doctors. Dr. Johnson's conclusion is less than unequivocal, and he recognized that his opinion was based on limited information. In contrast, Dr. Hiesterman's opinion is based on his long-term treatment of Ms. Lauderdale. In this context, Dr. Hiesterman's opinion is not outweighed by Dr. Johnson's, even in light of Dr. Johnson's greater qualifications in this area of specialization. This is true even if we discount the opinions of other professionals mentioned in Dr. Heisterman's notes, as the State Fund requests. We hold that the lower court properly gave greater weight to the opinion of Ms. Lauderdale's treating physician, and that the

5

court did not err in determining that Ms. Lauderdale's headaches were related to her automobile accident.

## II

Did the court err in determining that Ms. Lauderdale suffered a loss of earning capacity entitling her to 500 weeks of permanent partial disability benefits?

The lower court found that Ms. Lauderdale had unsuccessfully applied for several positions which would alleviate her physical problems because they involved less desk work. It found that retail sales positions for which Ms. Lauderdale is qualified pay between $3.35 and $3.50 per hour, in contrast to the $8.89 per hour which she was earning at her State job. The court found that the rehabilitation counselor who testified for the State Fund was not able to locate appropriate employment for which Ms. Lauderdale was qualified. It concluded that Ms. Lauderdale's actual loss in earning capacity was $216 per week.

After reviewing the transcript, we conclude that the above findings of the Workers' Compensation Court have substantial support in the evidence. Ms. Lauderdale testified that she was able to perform desk work for only four hours per day and that she had investigated retail sales opportunities in Helena, with the above-described results. Dr. Hiesterman testified by deposition that desk work could aggravate Ms. Lauderdale's headache problem. The State Fund's rehabilitation counselor found only one full-time position which he concluded would be appropriate for Ms. Lauderdale. That position required education and experience equivalent to a bachelor's degree in journalism, advertising, public administration, broadcasting, public relations, or a closely related area, plus three years of related experience. Ms. Lauderdale does not have a bachelor's degree, and has been in the workforce for less than ten years. The lower

6

court concluded that the State Fund had failed to overcome Ms. Lauderdale's showing that she cannot return to the position she held at the time of injury, or to a comparable position. We hold that this conclusion was not error.

III

Did the court err in awarding Ms. Lauderdale a lump sum payment of benefits for her proposed business venture?

The statute which governs whether Ms. Lauderdale is entitled to a lump sum conversion is § 39-71-741, MCA (1983):

> The biweekly payments provided for in this chapter may be converted, in whole or in part, into a lump-sum payment. . . . A controversy between a claimant and an insurer regarding the conversion of biweekly payments into a lump sum is considered a dispute for which the workers' compensation judge has jurisdiction to make a determination.

Conversion of biweekly payments to a lump sum is proper when the best interests of the claimant require it, but lump sum settlements should be the exception rather than the rule. Willoughby v. Arthur G. McGee & Co. (1980), 187 Mont. 253, 256, 609 P.2d 700, 701-02. This Court's standard of review of lump sum awards is whether the lower court's decision is supported by substantial evidence. Garmann v. E.R. Fegert Co. (Mont. 1987), 736 P.2d 123, 124, 44 St.Rep. 781, 783.

Ms. Lauderdale presented an extensive economic analysis of her proposed event-planning business. Her expert witness testified about the projected market and earnings of the business over its first three years of operation. Ms. Lauderdale testified about the steps she had already taken to get the business off the ground. The Workers' Compensation Court found her to be "an enthusiastic and determined woman with an obvious drive to succeed and an equally obvious belief that she can succeed in this business." Her attorney

points out that her 500 weeks of permanent partial disability benefits would expire when she was only 40 years of age.

Despite the conclusion by the State Fund's expert witness that the proposed business venture is highly speculative, substantial evidence supports the lower court's decision that a lump sum award for the proposed business is in Ms. Lauderdale's best interest. We conclude that the court did not err in awarding Ms. Lauderdale a lump sum payment of benefits for her proposed business venture.

Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

8