No. 92-184

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

CHARLES WHITE,

      Claimant-Appellant,

-vs-

FORD, BACON & DAVIS TEXAS, INC.

      Employer-Respondent,

   and

AETNA LIFE & CASUALTY CO.,

      Defendant-Respondent.

APPEAL FROM:   Workers' Compensation Court
of the State of Montana,
The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Jeffrey T. Renz, Billings, Montana

      For Respondent:

      William J. Mattix, Crowley Law Firm, Billings,
Montana

FILED

DEC 17 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  September 17, 1992
Decided:  December 17, 1992

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Claimant, Charles White, appeals the order of the Workers' Compensation Court which denied his claim for additional permanent partial disability benefits based upon a 1982 injury. We affirm.

The issues for our review are:

1. Does substantial evidence support the Workers' Compensation Court's conclusion that Charles White failed to prove an entitlement to additional permanent partial disability benefits?

2. Did the Workers' Compensation Court properly weigh the expert testimony?

3. Did the Workers' Compensation Court err in admitting evidence of Charles White's drug and alcohol abuse?

4. Does Aetna's proposed conclusion of law stating that Charles White is entitled to receive a $10,000 nominal disability award constitute a judicial admission?

Charles White (White) sustained a compensable back injury on May 8, 1982, while working as a construction laborer at the Exxon refinery in Billings, Montana. Aetna Life and Casualty Co. (Aetna) was the insurer for the employer, Ford, Bacon and Davis Texas, Inc. Aetna paid White temporary total disability benefits at the rate of $241 per week from May 8, 1982 through December 20, 1982. Pursuant to the January 11, 1983 rating of Dr. Nelson, a neurologist, Aetna paid claimant $6,025 in permanent partial disability benefits at the rate of $120.50 per week for 50 weeks.

Dr. Schwarten, an orthopedic surgeon, and Drs. Nelson and Peterson, both neurologists, examined White in 1982. They

2

performed various extensive examinations and tests. Dr. Peterson examined White on October 22, 1982 and concluded that he could return to work. On January 11, 1983, Dr. Nelson assigned a 10% impairment rating based on his June 16, 1982 examination. As above mentioned, Aetna paid 50 weeks of permanent partial disability benefits based upon this impairment rating. In addition, Aetna advised White that such payment would not close the case and that additional compensation might be paid if his ability to work was affected by the injury or if future medical reports showed an increase in the percentage of his loss.

White contends the 1982 injury has reduced his earning capacity because he can no longer perform heavy work. White submitted various testimony in support of that theory. The record demonstrates that White worked as a construction laborer for 754.4 hours in 1983, 1,104.8 hours in 1984 and 437.5 hours in 1985. White testified these were light duty jobs with the exception of one which required the use of a jackhammer. The supervisor on one job testified that White performed concrete and other heavy work without complaint.

White testified that in 1984 he obtained a real estate license and began working for Associate Realty because he could no longer perform physical labor. The broker at Associate Realty testified that his impression was that White left construction labor because he wanted to get away from the organizational pressures of the laborer's union in which he served as an officer. That broker further testified that White performed numerous physical labor

3

jobs, such as renovating a building, moving heavy boxes and building various items and that he never observed White showing any signs of pain or discomfort.

The record establishes a key aspect of the case. White did not seek medical treatment or examination for back pain from 1983 to August 1988. White's explanation was that he did not seek medical treatment for 5½ years for his back pain because he did not think he had any rights left following his receipt of the impairment settlement. That is contradicted by the evidence on the part of Aetna that he was advised of his right to receive additional medical care and possible compensation if there was further disability.

Dr. Nelson saw White following a sudden onset of pain in August 1988, which White experienced while helping a friend with some fencing. Dr. Nelson testified that he could not say to any degree of medical certainty whether the disc bulge demonstrated in a 1988 MRI had been there in 1982.

In May 1990, Dr. Espinosa examined White and found him to be normal, assessing no limitation with regard to lifting, pulling, pushing, reaching, walking, stooping or kneeling. In June 1990, Dr. Wagner, a psychologist, evaluated White and concluded that the pain and discomfort was probably exacerbated by White's anxiety and stress. In February 1991, Dr. Shaw, a specialist in occupational medicine, performed an independent medical examination and found no evidence of neurological defect or skeletal abnormality and could not attribute any of White's symptomology to his 1982 muscle

4

strain. He concluded that White's symptoms can be explained by his poor posture, excess weight, smoking and generally poor physical condition.

Extensive evidence was introduced to show that White had a long history of drug and alcohol abuse, starting at age 14. This evidence included his treatment history from Rimrock Foundation. While at Rimrock, White was examined by Dr. Ely, a psychiatrist, who noted the adverse effects of drug and alcohol consumption with regard to White's employment. Since White's discharge from Rimrock, he has held a number of jobs ranging in pay from $5.00 to $8.00 per hour. This is less than he could earn as a construction laborer.

## I.

Does substantial evidence support the Workers' Compensation Court's conclusion that White failed to prove an entitlement to permanent partial disability benefits beyond the permanent impairment award already paid to him as a result of his 1982 industrial injury?

A Workers' Compensation Court's decision will not be overturned by this Court if it is supported by substantial credible evidence. McIntyre v. Glen Lake Irrigation Dist. (1991), 249 Mont. 63, 813 P.2d 451. However, to the extent the decision is based on medical reports and depositions, this Court sits in as good a position as the Workers' Compensation Court and we review the evidence de novo. This de novo standard of review does not extend to a review of the entirety of the case and the overall decision.

5

Medical testimony must be harmonized with and considered in the context of the evidence as a whole. The substantial credible evidence standard controls the analysis of the record as a whole. McIntyre, 813 P.2d 454.

In this case, the Workers' Compensation Court relied on the conclusion of this Court in Brown v. Ament (1988), 231 Mont. 158, 752 P.2d 171. In Brown, a claimant was injured in 1978. Following the termination of treatment for that injury on December 1, 1978, the claimant sought no further treatment for the injury for 3½ years. The Workers' Compensation Court found it a difficult case to chart because too much time had passed without explanation or a tracing of the injury. This Court said that the medical evidence was inconclusive and at best established only a possibility of a causal relationship between the two injuries. Brown, 752 P.2d at 175. Similarly, White sought no further medical treatment for his back following the termination of his treatment for the 1982 injury for more than 5½ years after Dr. Nelson assessed the 10% impairment rating in January of 1983. White explained this lengthy lapse in treatment by testifying that he did not know he was entitled to additional medical benefits. However, a letter from Aetna to White dated March 2, 1983, expressly advised him that the case remained open and that he could qualify for additional medical benefits.

White relied on the testimony of Dr. Nelson whose August 1988 notes made no indication that White had been experiencing back problems between 1982 and 1988. Dr. Nelson concluded that White's industrial injury set the stage for potential re-injury down the

6

road, an occurrence which he thought had happened several times, including the 1988 incident. Dr. Nelson requested an MRI which did not show a herniated disc but did show a bulge of a disc. He testified that he could not say to any degree of certainty whether that bulge existed in 1982 or developed subsequently. Dr. Nelson recommended light work as he had originally done in 1982. As previously mentioned Dr. Espinosa assessed no limitations in May of 1990 as to White's employment. In February 1991, Dr. Shaw, a specialist in occupational medicine, opined that White's condition was mechanical, found no evidence of neurological deficit or skeletal abnormality, and had no reason to preclude White from returning to work as a construction laborer. Dr. Shaw could not attribute any of White's symptomatology to his 1982 muscle strain. In addition, the record contains substantial evidence on the issue including the following: (1) White's representations and admissions at Rimrock; (2) White's representations to medical and psychiatric professionals that he did not experience chronic back pain; (3) White's representations to SRS employees who found him ineligible for rehabilitation services; (4) White's contradictory statements in his deposition that he had an awareness of a constant uncomfortableness and subsequent testimony at trial of chronic back pain; and (5) White's continued construction employment during the years 1983 to 1986.

The Workers' Compensation Court concluded that White had failed to prove an entitlement to permanent partial disability benefits beyond the permanent impairment award already paid. The

7

court pointed out that White had the burden of proving his case by a preponderance of credible evidence and referred to the statutory definition. The court then concluded that White had failed to prove by a preponderance of evidence that the injury he received in 1982 was responsible for or proximately caused his current employment condition. The court then pointed out that in this case the medical evidence is completely contradictory, and at best establishes only a possibility of a causal link between White's employment and the industrial injury - which is insufficient to find compensability.

The court finally concluded that given the prolonged lapse in medical treatment and other evidence discounting the extent of White's pain and discomfort, the totality of the evidence preponderated in favor of finding that White's employment situation is not a direct result of his compensable industrial injury. The foregoing conclusions are supported by substantial evidence in the record. We therefore affirm that holding of the Workers' Compensation Court.

White disputes the Workers' Compensation Court's finding that his chemical use had an adverse effect on his employment by his own admission in the Rimrock Foundation records and other testimony before the court. He argues that such findings are not material and that reliance on them is clear error. The record demonstrates that White entered a treatment program at Rimrock in 1987, but did not successfully complete the aftercare program. He lapsed into subsequent chemical abuse as late as 1989. Mr. and Mrs. White both

8

testified in connection with this issue. The Workers' Compensation Court is in the best position to observe the character and demeanor of the witnesses. We will not substitute our judgment for that of the trial court. Sharkey v. Atlantic Richfield Co. (1989), 238 Mont. 159, 777 P.2d 870. We conclude the evidence relating to drug and alcohol abuse is relevant to both job performance and earning capacity. We further conclude that the Workers' Compensation Court properly admitted substance abuse evidence and weighed that evidence properly.

We hold that the Workers' Compensation Court correctly concluded that White had failed to prove an entitlement to additional permanent partial disability benefits and that such conclusion is supported by substantial credible evidence.

II.

Did the Workers' Compensation Court properly weigh the expert medical testimony?

White contends that the Workers' Compensation Court failed to properly weigh Dr. Nelson's testimony as White's treating physician. He contends that Dr. Nelson's testimony as treating physician was entitled to greater evidentiary weight. See Snyder v. San Francisco Feed & Grain (1987), 230 Mont. 16, 27, 748 P.2d 924, 931. As previously mentioned, Dr. Nelson's treatment was very limited. He examined White on only two occasions--on June 16, 1982 and in August 1988. As previously outlined, his testimony at most established the possibility of a causal link between the 1982 injury and White's subsequent condition but does not constitute

9

medical evidence which demonstrated to a reasonable degree of probability that there was a connection. We will not set forth in detail the extensive testimony which preponderated in favor of finding no permanent physical impairment in 1982 beyond the impairment paid for. We conclude there is substantial evidence to support the analysis and conclusions reached by the Workers' Compensation Court.

We hold the Workers' Compensation Court properly weighed the expert medical testimony.

### III.

Did the Workers' Compensation Court err in admitting evidence of White's drug and alcohol abuse?

White contends that the Workers' Compensation Court should not have admitted evidence about drug and alcohol abuse because Aetna refused to supplement discovery requests properly. Specifically, he claims that this action prejudiced him because he was not informed that Aetna would claim that substance abuse influenced his loss in earning capacity. He maintains that he was entitled to rely on Aetna's good faith in making discovery responses and thus he could reasonably expect that this would not be an issue at trial.

The record is replete with information to the contrary. Aetna's discovery requests asked for information relating to treatment for chemical dependency and all records relating to chemical dependency treatment. White signed the releases for such treatment information. Documents filed with the court argued the

10

relevancy of treatment records and indicated that the possibility of a causal relationship between substance abuse and loss of earning capacity would be an issue. During their depositions, both Mr. and Mrs. White were questioned at length--with particularity and without objection--about his drug and alcohol abuse and its effects. On September 19, 1991, Aetna served a supplemental response to an interrogatory inquiring whether it contended that some other condition contributed to White's degree of disability, stating:

> At this point, defendant believes that the records identified and exchanged by the parties and [sic] indicate that any loss of earnings or capacity that Mr. White has experienced is not causally related to his May 8, 1982 industrial injury. Defendant believes that this conclusion is supported by the medical and psychological records that have been identified and exchanged and, most particularly, by the treatment records from Rimrock Foundation. The extent of Mr. White's chemical abuse and its impact on his employment history is set forth in detail in those records.

The Workers' Compensation Court noted this, stating, "I think the answer is pretty much right on the money as to what they're arguing."

A trial court's ruling on the admissibility of evidence will not be disturbed absent a showing of an abuse of discretion. Britton v. Farmers Ins. Group (1986), 221 Mont. 67, 721 P.2d 303. White bases his claim of error here upon his inability to discern from pre-trial events that Aetna would theorize that White's drug and alcohol abuse affected his ability to maintain his employment. Nonetheless, White's counsel came to the hearing armed with a brief dated and signed the day prior to the hearing which supported his argument against admitting evidence of drug and alcohol abuse.

11

White's counsel later objected to admission of the evidence because it was cumulative—because the evidence was already included in the Whites' depositions which had already been admitted in the record based on his stipulation. We conclude that White was not taken by surprise in any manner nor was there a prejudicial failure to furnish information.

We hold that the Workers' Compensation Court properly admitted evidence of White's drug and alcohol abuse.

## IV.

Does Aetna's proposed conclusion of law stating that White is entitled to receive a $10,000 nominal disability award constitute a judicial admission?

Aetna proposed the following conclusion of law:

> Mont. Code Ann. § 39-71-2906 provides that the judge of the Montana Workers' Compensation Court may grant nominal disability awards in cases where it is found that an accident has occurred in the course and scope of employment but no disability has resulted therefrom. That appears to be the situation in this case. Mr. White sustained a compensable industrial injury on May 8, 1982. As a result of that injury, it does not appear that he has sustained any permanent partial disability which term is defined as a loss of earnings or earning capacity occasioned by the industrial injury. Therefore, Mr. White is awarded the sum of TEN THOUSAND DOLLARS ($10,000) as a nominal disability award pursuant to the provisions of Mont. Code Ann. § 39-71-2906.

Aetna's position has not changed from the beginning. It has consistently maintained that White sustained no loss of earning capacity as a result of his industrial injury. Aetna's proposed conclusion recommended that the Workers' Compensation Court exercise its discretion and grant Mr. White a nominal disability award. A nominal benefit award under former § 39-71-2906, MCA, was

12

authorized in cases where an accident had occurred during the course and scope of employment but no disability resulted therefrom. This does not have the effect of a confessory pleading or evidentiary admission. It could not be used as a substitute for legal evidence at trial.

A court entering judgment on the basis of proposed findings and conclusions submitted by the parties has a duty to properly consider the facts of the case and exercise its own independent judgment. In Sharkey, we said that the Workers' Compensation Court properly considers the actual facts presented at trial through witnesses and exhibits and what the parties may have contended is irrelevant to the factual determinations made by the court. Sharkey, 777 P.2d at 873.

Here the Workers' Compensation Court declined to award even a nominal disability award. This is within its discretion. In Brown v. Markve (1985), 216 Mont. 145, 700 P.2d 602, the jury awarded plaintiff $25,000 despite the fact that defense counsel suggested $30,000 as a fair verdict. This Court on appeal stated:

> The court . . . concluded that this argument to the jury had the legal effect of an admission against interest which set the lower limits of the verdict at $30,000. . . .
>
> . . . [T]hat suggestion cannot be classed as evidence or an admission against interest which set a floor of $30,000 below which the jury could not go. The jury remained the finder of fact with the right to set the damages at $25,000 or such other figure as the jurors might conclude to be appropriate under the evidence.

Brown, 700 P.2d at 603.

Similarly, Aetna's proposed conclusion did not establish a lower limit of liability. We conclude that the Workers' Compensation

13

Court remained free to consider this proposed conclusion in light of the evidence presented and to reach its own conclusions.

We hold that Aetna's proposed conclusion stating that White is entitled to receive a $10,000 nominal disability award does not constitute a judicial admission.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

14

December 17, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Jeffrey T. Renz
Attorney at Law
724 Grand Ave.
Billings, MT  59101

William Mattix
Crowley Law Firm
P.O. Box 2529
Billings, MT  59103-2529


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
       Deputy