DA 10-0307

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 43

JOE WRIGHT,

      Petitioner and Appellee,

   v.

ACE AMERICAN INSURANCE CO.,

      Respondent and Appellant.

APPEAL FROM:    Workers' Compensation Court
                Cause No. WCC 2009-2210
                Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Charles G. Adams; Keller, Reynolds, Drake, Johnson, & Gillespie,
            P.C.; Helena, Montana

      For Appellee:

            Patrick Sheehy; Halverson, Sheehy & Plath, P.C.; Billings, Montana

                        Submitted on Briefs:  January 12, 2011

                                  Decided:  March 15, 2011

Filed:

_____
                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Ace American Insurance Co. (Ace), appeals from the 2010 Workers' Compensation Court (WCC) Order holding Ace liable for additional medical benefits and allowing for the reinstatement of temporary total disability benefits for claimant Joseph Wright (Wright). We address the following issues:

¶2 **1. Whether the WCC erred as a matter of law in ordering additional medical benefits.**

¶3 **2. Whether the WCC's decision is supported by substantial credible evidence.**

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In October 2004, while working for Interstate Brands, Inc., Wright was removing pallets from a jammed conveyor belt when the belt started up and jerked his left arm. Wright underwent shoulder surgery on January 12, 2005, to address his injury. Wright testified at trial that since the surgery, his pain has worsened significantly to the point he is unable to work.

¶5 Over the years since his injury, Wright has been examined and evaluated by numerous physicians. Dr. Gregg Singer (Singer), who is board certified in physical medicine and rehabilitation and a certified independent medical examiner, performed two independent medical examinations (IMEs) on Wright in 2006. Singer agreed there were sufficient objective findings to support a diagnosis of postsurgical chronic pain and suspected depression as one contributing factor. On July 7, 2006, Singer opined that Wright had reached Maximum Medical Improvement (MMI). He assigned Wright a six percent whole person impairment rating and recommended medications for pain and

2

depression. Singer restricted Wright permanently to light-duty work with no overhead activity with his left shoulder.

¶6 Following Singer's IMEs, Wright continued to be in pain with some increase in symptoms. Wright first saw Dr. Jeffrey Hansen (Hansen) in December, 2006. Hansen is a board certified orthopedic surgeon. Hansen resides and has admitting privileges in Powell, Wyoming and Wright has been travelling to Powell to see him. Hansen's Montana license expired at the end of March, 2008—a fact he apparently did not realize until his deposition in this case.

¶7 After ongoing evaluations from 2006 to 2009, Hansen concluded that Wright's industrial injury had resulted in the ongoing conditions affecting both Wright's shoulder and cervical spine. Hansen opined that two arthroscopic surgical repairs may provide relief from Wright's shoulder pain: a biceps tenodesis and completion of Wright's partial rotator cuff tear with rotator cuff repair. Regarding Wright's spine, Hansen found evidence of a degenerative disk disease of the cervical spine with nerve root irritation and secondary neck pain and headache. He explained that while the cervical condition is degenerative, the industrial accident and resulting shoulder injury were significantly likely to have exacerbated the underlying condition. Hansen reported that a cervical treatment plan must be developed to address Wright's pain and also suggested that neurosurgery or ongoing consultation with a neurologist may be helpful. Hansen supported his findings with an MRI and the multiple evaluations he performed on Wright. Although Hansen did not review any job analyses, he opined that Wright's pain has

3

become such a distraction that it may be difficult or impossible for Wright to complete any work.

¶8     On April 4, 2008, during the time Wright was being seen by Hansen, Dr. Michael Shabacker (Shabacker) assumed Wright's care for pain management. Shabacker specializes in chronic pain management. While he was not aware of any specific treatment that would be curative of Wright's condition, Shabacker testified he believes Wright's complaints of pain are real and he does not believe Wright is malingering or lying about his pain. Shabacker found Wright at MMI on October 8, 2008, and reviewed several job analyses in an attempt to find something that Wright could do "from a work standpoint" in spite of his pain. On January 12, 2009, Shabacker noted some doubt as to whether Wright was capable of returning to work. He testified in his deposition that Wright's return to work would be a "matter of commitment" to working, despite hurting when he works. Shabacker recommended managing the pain as best they can with medication.

¶9     On January 20, 2010, the WCC held a trial to determine Ace's liability for the treatments recommended by Hansen and Wright's eligibility for continued disability benefits. Depositions from Hansen, Singer, Shabacker, and Wright were presented. As noted, Wright testified at trial, as did his wife, Bette, and vocational rehabilitation counselor Travis Stortz. Stortz testified that Wright was qualified for alternative jobs and whether he could perform them was "a matter of the pain consideration." Stortz agreed that if the court accepted Wright's testimony, it would be "impossible" for him to return to work. The WCC found Wright to be a credible witness.

4

¶10 Following trial, the WCC issued detailed findings of fact and concluded that Ace is liable for additional medical benefits in the form of the surgical procedure Hansen proposed for Wright's shoulder. In so holding, the WCC reasoned that although Dr. Shabacker is well qualified in the field of chronic pain management, his opinions go to the management of Wright's pain rather than to the cause. Given Hansen's expertise and qualifications, the WCC gave more weight to his opinion as to the cause and diagnosis of Wright's continued pain.

¶11 In determining whether Ace is liable for treatment relating to Hansen's cervical diagnosis, the WCC acknowledged that Hansen is not a spine surgeon. The WCC therefore ordered Wright to consult Dr. Rizzolo, a spine surgeon who previously had seen Wright. If Dr. Rizzolo disagreed that further treatment of Wright's cervical spine is warranted, the WCC allowed Wright to seek the opinion of one more orthopedic physician in Montana. The WCC determined that if neither physician agreed with Hansen's recommendation, Ace will not be liable for further cervical treatment. Having decided that Wright may have a chance of improving his condition, the WCC concluded that Wright has not reached MMI and is entitled to reinstatement of his temporary total disability benefits.

¶12 Ace now appeals the WCC decision.

## STANDARD OF REVIEW

¶13 This Court employs two standards of review for decisions of the WCC. The Court reviews findings of fact to determine if they are supported by substantial, credible

5

evidence, and we review conclusions of law to determine if they are correct. *Hiett v. Missoula Co. Pub. Schs.*, 2003 MT 213, ¶ 15, 317 Mont. 95, 75 P.3d 341.

¶14 In reviewing the WCC's factual findings, "we do not resolve conflicts in the evidence, and we do not consider whether evidence supports findings that are different from those made by the WCC; rather, we confine our review to determining whether substantial credible evidence supports the findings actually made by the WCC." *Quick v. Mont. St. Fund*, 2009 MT 162, ¶ 32, 350 Mont. 455, 208 P.3d 415 (citations omitted). We defer to the WCC's findings concerning credibility and the weight to be accorded to the testimony of witnesses who testify in person at trial. *Harrison v. Liberty N.W. Ins. Corp.*, 2008 MT 102, ¶ 12, 342 Mont. 326, 181 P.3d 590. Because we are in as good a position as the WCC to assess testimony presented at trial by way of deposition, we review deposition testimony de novo. *Id.* at ¶ 13. "However, . . . even where we conduct de novo review of deposition testimony, we are ultimately restricted to determining whether substantial credible evidence supports the WCC's findings." *Id.*

¶15 We apply the 2003 version of the Montana Workers' Compensation Act (Act) because that was the law in effect at the time of Wright's injury. *Quick*, ¶ 23.

## DISCUSSION

¶16 On appeal, Ace argues that the WCC erred in relying on Hansen's testimony and diagnoses because he does not meet the statutory definition of a treating physician. Ace contends Hansen cannot qualify as a treating physician under § 39-71-116(36)(a), MCA (2003), because he is not currently licensed in Montana and his diagnoses and recommended treatment, therefore, are not primary medical services as defined in § 39-

6

71-116(26), MCA (2003). Ace also contends the WCC erred in relying on Hansen's opinion to the exclusion of the opinions of the other physicians who examined Wright and its findings accordingly are not supported by the weight of the evidence.

¶17 **1. Whether the WCC erred as a matter of law in ordering additional medical benefits.**

¶18 The Act allows for payment of "primary medical services" for conditions resulting from the worker's injury "for those periods as the nature of the injury or the process of recovery requires." Section 39-71-704(a), MCA (2003). "'Primary medical services' means treatment prescribed by a treating physician, for conditions resulting from the injury, necessary for achieving medical stability." Section 39-71-116(26), MCA (2003). "Medical stability" is synonymous with "maximum medical healing" and means "a point in the healing process when further material improvement would not be reasonably expected from primary medical treatment." Section 39-71-116(18), MCA (2003). A claimant is entitled to such "primary medical services" as are necessary to permit him or her to sustain medical stability. *Hiett*, ¶ 19.

¶19 For purposes of determining "primary medical services," "treating physician" means a person who is primarily responsible for the treatment of a worker's compensable injury and is:

> (a) a physician licensed by the state of Montana . . . and has admitting privileges to practice in one or more hospitals, if any, in the area where the physician is located;
>
> . . .
>
> (f) for a claimant residing out of state or upon approval of the insurer, a treating physician defined in subsections (36)(a) through (36)(e) who is licensed or certified in another state . . . .

7

Section 39-71-116(36)(a)-(f), MCA (2003).

¶20 Ace contends that because Hansen is no longer licensed in Montana, his diagnoses cannot be considered primary medical services, and thus, the WCC erred in considering his opinion to determine Ace's liability for additional medical benefits. We conclude that the WCC correctly applied the law to the specific facts of this case.

¶21 Ace is incorrect in asserting that Hansen must be licensed in Montana in order to qualify as a treating physician. Section 39-71-116(36)(f), MCA (2003), clearly provides that physicians licensed or certified in another state may qualify as a treating physician upon approval of the insurer. Although Wright did not seek Ace's approval to see Hansen, we have consistently held that a claimant's failure to obtain the insurer's authorization does not automatically absolve an insurer of liability for treatment rendered by unauthorized physicians. *See Gamble v. Sears*, 2007 MT 131, ¶ 58, 337 Mont. 354, 160 P.3d 537 (citing *Garland v. Anaconda Co.*, 177 Mont. 240, 244, 581 P.2d 431, 433 (1978); *Hutchison v. Gen. Host Corp.*, 178 Mont. 81, 92, 582 P.2d 1203, 1209 (1978); *Linton v. City of Great Falls*, 230 Mont. 122, 132, 749 P.2d 55, 61 (1988)). Rather, the WCC must consider the actual diagnosis of the worker's condition to determine whether the recommended treatment is appropriate. *Id.* at ¶¶ 57-59.

¶22 In *Gamble* and the cases cited therein, this Court was considering the insurer authorization requirements of § 39-71-1101, MCA, when a worker changes treating physicians. *Id.* at ¶ 50. We explained that it would be contrary to the purpose of the Act to consider a claimant's failure to meet the authorization requirement as a categorical bar to insurer liability. *Id.* at ¶ 59. The analysis of authorization requirements in our earlier

8

decisions provides persuasive guidance in interpreting § 39-71-116(36)(f), MCA (2003), and its application to this case.

¶23 Unlike *Gamble*, *Hutchison*, and *Linton*, the WCC did not order Ace to pay Hansen to provide the recommended treatment. Therefore, our holding in *Garland* is most on point. In *Garland*, we affirmed the WCC's decision not to compensate an unauthorized doctor for treatment, but held that the WCC should have considered the doctor's diagnosis rather than simply treating Garland's failure to comply with the authorization rule as a categorical bar to coverage. *Garland*, 177 Mont. at 244, 581 P.2d at 433. In this case, the WCC correctly considered Hansen's opinion even though, at the time of trial, Hansen could not be considered Wright's treating physician within the meaning of the statutory definition.

¶24 When construing a statute, our goal is to avoid absurd results and give effect to the statute's purpose. *See* § 1-2-102, MCA; *Fliehler v. Uninsured Employers Fund*, 2002 MT 125, ¶ 13, 310 Mont. 99, 48 P.3d 746; *S.L.H v. State Compen. Mut. Ins. Fund*, 2000 MT 362, ¶ 17, 303 Mont. 364, 15 P.3d 948; *Hiett*, ¶ 32. In interpreting a provision of the Act, as with other statutes, "we must view it as a part of a whole statutory scheme and construe it so as to forward the purpose of that scheme." *Gamble*, ¶ 59. The Act recognizes that "[a] worker's removal from the work force due to a work-related injury or disease has a negative impact on the worker, the worker's family, the employer, and the general public." Section 39-71-105(2), MCA (2003). Thus, one objective of the Act is to return an injured worker to work. *Id.* The WCC found that objective would more likely

be achieved by Hansen's recommended course of treatment than by continuing a course of pain management that had not so far succeeded.

¶25 We recognize the Act's companion goal of cost-effectiveness may be served by limiting the number of physicians involved in an injured worker's care. Hansen, however, qualified as a treating physician when Wright initially saw him in 2006. Hansen then formulated an opinion and diagnosis of Wright's condition based on his evaluations of Wright between 2006 and 2009. His treatment of Wright and ultimate diagnoses are within the role of a treating physician contemplated by § 39-71-116(36), MCA (2003). He was the only orthopedic specialist whose testimony was presented at trial. It would be absurd and contrary to the purpose of the Act to find that the WCC could not consider Hansen's testimony merely because his Montana license expired prior to trial.

¶26 **2. Whether the WCC's decision is supported by substantial credible evidence.**

¶27 Substantial credible evidence is that which a reasonable mind could accept as adequate to support a conclusion. *Harrison*, ¶ 11 (citing *Simms v. State Compen. Ins. Fund*, 2005 MT 175, ¶ 11, 327 Mont. 511, 116 P.3d 773). Evidence will be considered substantial even if it is contradicted by other evidence, even if it is somewhat less than a preponderance, and even if it is inherently weak. *Id.*

¶28 Ace contends that the WCC decision is not supported by substantial credible evidence because the WCC improperly gave Hansen's opinion more weight than the opinion of Shabacker, Wright's treating physician, and other Montana physicians who

had seen Wright since his injury. However, we have consistently held that the treating physician's opinion, while often more persuasive, is not dispositive. *Snyder v. S.F. Feed & Grain*, 230 Mont. 16, 27, 748 P.2d 924, 931 (1987); *White v. Ford, Bacon, & Davis Tex., Inc.*, 256 Mont. 9, 15, 843 P.2d 787, 791 (1992). The WCC appropriately considered the persuasiveness of the various physicians' opinions in its decision. For example, the WCC stated in its Order:

> I have no doubt that Dr. Shabacker is well-qualified in the field of chronic pain management, and I find Dr. Shabacker's opinions credible. Dr. Shabacker's opinions, however, go to the reality of Wright's pain and how to best manage it. Dr. Shabacker's opinions do not go to the cause of Wright's pain and whether additional medical treatment could eliminate it.
>
> On the other hand, Dr. Hansen's expertise and qualifications cause me to give his opinion as to the likely causes and potential treatment of Wright's shoulder condition greater weight. The issue before the Court is not an issue of pain management - it is an orthopedic issue and whether orthopedic surgery is indicated. I find the opinion of this orthopedic surgeon to be more persuasive, even though he is not considered Wright's treating physician under Montana law.

¶29 We have held that the treating physician's testimony is not always entitled to more weight than that of other physicians. *See Snyder*, 230 Mont. at 27, 748 P.2d at 931; *White*, 256 Mont. at 11, 843 P.2d at 791. In *Snyder*, for example, the treating physician was not knowledgeable in the diagnosis offered by the non-treating physician. *Id.* at 28, 748 P.2d at 931. Similarly, in this case, while Shabacker was Wright's treating physician, he was a pain specialist, not an orthopedic specialist, and was not aware of any special treatment that would help Wright.

11

¶30   Ace directs the Court to our holding in *Nielson v. Mont. St. Fund*, 2003 MT 95, ¶ 49, 315 Mont. 194, 69 P.3d 1136, which overturned the WCC for lack of substantial credible evidence.  However, the WCC in *Nielson* relied on a physician whose testimony was inconsistent with his own earlier representations and lacked additional information to substantiate his change of opinion.  *Nielson*, ¶ 47.  Unlike the physician's testimony in *Nielson*, Hansen's opinion is consistent and based on his expertise as an orthopedic surgeon and his own numerous evaluations of Wright.  The WCC clearly justified giving more weight to Hansen's opinion.  The WCC is in a better position than is this Court to resolve any conflicts in the evidence.

¶31   After de novo review of the deposition testimony, and having concluded that the WCC properly considered Hansen's testimony, we find that the decision of the WCC is supported by substantial credible evidence.

## CONCLUSION

¶32   We find no error in the WCC's decision that Wright is entitled to additional medical benefits and to reinstatement of his temporary total disability benefits.  The judgment of the WCC is affirmed.


/S/ BETH BAKER


We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER

12

/S/ BRIAN MORRIS
/S/ JIM RICE