

DA 11-0347

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 3

EDNA BANCO,

      Petitioner and Appellant,

  v.

LIBERTY NORTHWEST INSURANCE
CORPORATION,

      Respondent and Appellee.

APPEAL FROM:    Workers' Compensation Court
                    Cause No. WCC 2006-1544
                    Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          John E. Seidlitz, Jr.; Seidlitz Law Office; Great Falls, Montana

      For Appellee:

          Larry W. Jones; Law Offices of Larry Jones; Missoula, Montana

                                Submitted on Briefs:  December 7, 2011

                                        Decided:  January 10, 2012

Filed:

                   _____
                                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Edna Banco (Banco) appeals from the Order and Judgment of the Montana Workers' Compensation Court (WCC), which determined that Liberty Northwest Insurance Corporation (Liberty) is not liable for Banco's occupational disease (OD) in her right shoulder. The sole issue on appeal is whether there was substantial credible evidence to support the WCC's conclusion that Banco was not last injuriously exposed to the hazard of the OD at her employment with Liberty's insured.

### PROCEDURAL AND FACTUAL BACKGROUND

¶2 Banco worked concurrently at 4B's Restaurant and the Child Development Center on Malmstrom Air Force Base (CDC). 4B's is insured by Liberty, and CDC is insured under the federal workers' compensation system. At the time she filed her claim for Montana workers' compensation benefits, Banco had worked for twenty-eight years as a cook at CDC, preparing hundreds of meals a day. Banco's job required stirring large quantities of food and lifting heavy pots and pans; slicing and cutting meat, vegetables and fruit; doing dishes; helping serve the meals; and putting away "freight." Her shift at CDC typically ran from 6:30 a.m. to 3:00 p.m. on weekdays. Banco also had worked for many years as a server at 4B's three nights a week and from 7:00 a.m. to 3:00 p.m. on Saturdays and Sundays. There, she waited tables and carried food trays, ice buckets and bus tubs. Between the two jobs, Banco worked fifty-five to sixty hours a week for more than twenty years. Banco quit her job at 4B's on or about April 29, 2005.

2

¶3     Banco filed a report of a shoulder injury on June 10, 2005, naming 4B's as her employer.  She stated her shoulder condition developed over time and no particular incident caused it.  She continued to work full-time at CDC after she left 4B's.  Banco told Jack Randolph, an investigator from Liberty, she quit working at 4B's but stayed on at CDC because she thought "if I give up one that it might be a little easier on me."  She also told Randolph her job duties at CDC were "definitely" more strenuous than at 4B's, as they required "constant" kitchen work.  During her deposition, Banco stated the two jobs involved "equal lifting."

¶4     Dr. Keith D. Bortnem, Banco's treating physician, testified she suffered from a degenerative tendinosis of her shoulder that is multifactorial in origin.  He stated activities which involve repetitive, overhead and chronic uses of the arms away from the body predispose people to developing the condition.  Dr. Bortnem performed arthroscopic shoulder surgery on Banco on June 21, 2005.  Banco subsequently underwent an independent medical evaluation by Dr. John C. Schumpert, who concluded that Banco's shoulder condition was more related to her work at CDC and likely would have occurred had she never worked at 4B's.  Dr. Aimee V. Hachigian examined Banco in July 2006, and opined that Banco's shoulder complaints were triggered equally by her work at CDC and 4B's.

¶5     The parties dispute Banco's duties at CDC after she left 4B's and before her surgery.  Banco contends the record does not show she returned to work at CDC after quitting 4B's until after her surgery, at which time she did "no lifting and [] only

3

paperwork." Liberty claims the evidence showed she continued to work at CDC under the same conditions that could have caused her shoulder condition. Banco's interview with Randolph on June 20, 2005, indicates she continued with the same cooking and cleaning duties at CDC after leaving 4B's, but prior to her surgery. Dr. Bortnem, who testified he had no knowledge of Banco's work at CDC, wrote her a note four weeks after her surgery, indicating "she can work doing paperwork only at her request." Banco advised Dr. Schumpert she continued to work at CDC full-time after she left 4B's. She testified at her deposition in April 2006 that she still worked at her CDC job, but did "more paperwork," and that "the other girls" did any lifting for her.

¶6 Liberty denied Banco's claim for workers' compensation benefits. Banco and Liberty then brought the matter before the WCC on a stipulated record. Witness testimony was provided solely by deposition. The court was persuaded that Banco was exposed to working conditions of the type and kind giving rise to her shoulder condition at both 4B's and CDC. Since her last day of work was in April 2005, the court applied the 2003 statute, § 39-72-303(1), MCA (2003).

¶7 The WCC relied on our prior case law interpreting the statutory standard for determining liability when a worker has been exposed to hazards at more than one place of employment. *Liberty N.W. Ins. Corp. v. Mont. State Fund*, 2009 MT 386, ¶ 19, 353 Mont. 299, 219 P.3d 1267 (*In re Mitchell*). "[F]or purposes of the initial liability determination of an OD where two or more employers are potentially liable, the 'last injurious exposure' to the hazard of the OD occurs during the last employment at which

4

the claimant was exposed to working conditions of the same type and kind which gave rise to the OD." *In re Mitchell*, ¶ 26. The WCC found Banco was last exposed to work "of the same type and kind" that gave rise to her shoulder condition while she was working at CDC. Thus, since she was not last exposed at 4B's, Liberty was not liable under the "last injurious exposure" rule. Banco appeals the WCC's judgment.

## STANDARD OF REVIEW

¶8 We review the WCC's factual findings to determine whether they are supported by substantial credible evidence, and we review the WCC's conclusions of law to determine if they are correct. *Fleming v. Int'l Paper Co.*, 2008 MT 327, ¶ 17, 346 Mont. 141, 194 P.3d 77. The Court will not resolve conflicting evidence, nor do we consider whether evidence supports findings different from those made by the WCC. *Wright v. Ace Am. Ins. Co.*, 2011 MT 43, ¶ 14, 359 Mont. 332, 249 P.3d 485. Since we are in the same position as the WCC to assess deposition testimony, we review deposition testimony de novo. *Wright*, ¶ 14. However, "even where we conduct de novo review of deposition testimony, we are ultimately restricted to determining whether substantial credible evidence supports the WCC's findings." *Wright*, ¶ 14 (quoting *Harrison v. Liberty N.W. Ins. Corp.*, 2008 MT 102, ¶ 13, 342 Mont. 326, 181 P.3d 590).

## DISCUSSION

¶9 ***Was there substantial credible evidence for the WCC to conclude Banco's "last injurious exposure" occurred at CDC?***

¶10 An "occupational disease" means "harm, damage, or death . . . arising out of or contracted in the course and scope of employment and caused by events occurring on

5

more than a single day or work shift." Section 39-72-102(10), MCA (2003). Under the Occupational Disease Act of Montana, "[w]here compensation is payable for an occupational disease, the only employer liable is the employer in whose employment the employee was last injuriously exposed to the hazard of the disease." Section 39-72-303(1), MCA (2003). This case turns on application of that statute to an OD claim where multiple employers may have contributed to the condition. Although § 39-72-303 was part of the since-repealed Occupational Disease Act of Montana, we apply it here since an employee's last day of work is "the point in time from which [an] occupational disease claim [will] flow." *Fleming*, ¶ 27. The language of the current statute, § 39-71-407(13), MCA (2011), is identical.

¶11 In *In re Mitchell*, we considered the standard for liability when an employee's work for multiple consecutive employers may have contributed to a claimant's OD. ¶ 14. We adopted the "potentially causal" standard, finding a claimant who was "arguably exposed to the hazard of an OD among two or more employers is not required to prove the degree to which the working conditions with each given employer have actually caused the OD in order to attribute initial liability [between the employers' insurers]." *In re Mitchell*, ¶ 24. Instead, the claimant must prove only that she was exposed to working conditions of the same type or kind that gave rise to the OD. *In re Mitchell*, ¶ 26. Under the "last injurious exposure" rule, therefore, "where two or more employers are potentially liable," liability for the OD is borne by the insurer providing coverage for the

6

"last employment at which the claimant was exposed to working conditions of the same type and kind which gave rise to the OD." *In re Mitchell*, ¶ 26.

¶12    Banco first argues the WCC erred because there was no evidence of an aggravation or any change to Banco's shoulder after she quit 4B's. We declined in *In re Mitchell*, however, to adopt the insurer's proposed standard under which the "last injurious exposure" rule would immunize a subsequent insurer unless a permanent aggravation of or contribution to the OD is established. *See In re Mitchell*, ¶ 33 (J. Rice, concurring). Rather, we made clear that an insurer's liability is based on the working conditions present in the employment and whether they are of the same type and kind as those that led to the development and diagnosis of the OD, even if the subsequent employment "was not the major contributing cause of his OD . . . ." *In re Mitchell*, ¶ 25.

¶13    Secondly, Banco argues the evidence and the WCC's findings focused on which of the two employment positions caused her shoulder injury, not on whether she continued to be exposed to the same conditions while maintaining her position with CDC. She contends the lack of analysis or evidence of her specific duties at CDC *after* she left 4B's is a fatal flaw in the WCC's analysis and requires remand for further consideration. The WCC found Banco quit working at 4B's on or around April 29, 2005. She continued to work at CDC after she quit 4B's because she believed giving up one job might make things easier for her. Under *In re Mitchell*, the WCC is not required to find whether the conditions at CDC actually were "a substantial contributing cause" of Banco's condition. ¶ 24. Instead, the WCC applies the "potentially causal" standard. *In re Mitchell*, ¶ 24.

7

Thus, the issue to be reviewed is not whether contribution to the OD is established, but whether her working *conditions* at CDC were of the same type and kind after she left 4B's.

¶14    In its order, the WCC described in detail Banco's duties at CDC and 4B's. It found "that Banco worked two physically demanding jobs seven days a week, and well in excess of 40 hours per week, for over 25 years." The court found that she was exposed to working conditions of the type and kind which would give rise to her shoulder condition both at 4B's and at the CDC, where she continued to work after leaving employment with 4B's.

¶15    Our review of the depositions in light of the deference owed to the WCC's findings of fact leads us to conclude the court had substantial credible evidence upon which to make these findings. Banco admitted she continued to work at CDC after she left 4B's. Banco described her duties at CDC in the June 2005 Randolph interview, and did not indicate any of those duties had changed since the time she worked both jobs. She was still responsible for making breakfast and lunch daily, requiring constant "multi-tasking" to have the meals ready on time, afternoon snacks prepared, and everything cleaned up to be out by three o'clock. She told Randolph, "then I have paperwork[,] which I don't have time to do." Though she testified in her deposition that her work at CDC had changed so that she did "more paperwork" and co-workers assisted with the lifting, this testimony occurred long after her last day of work at 4B's and nearly a year following surgery. Dr. Bortnem's records show it was not until July 2005, nearly

8

three months after she quit 4B's and a month after surgery, that he wrote an order permitting Banco to change her duties to paperwork only. The evidence in the record, though limited, supports the WCC's finding that prior to her surgery, Banco continued to work at CDC in the same capacity before and after she quit work at 4B's.

¶16 Banco finally contends the "last injurious exposure" rule should not apply here because she worked the two jobs concurrently and was exposed to conditions giving rise to her OD at both places of employment. Had the WCC not made an express finding that Banco was last injuriously exposed to the hazard at CDC, this argument might require further consideration. Given the WCC's findings, however, which we have found to be substantiated by the record, the law precludes imposition of liability on 4B's. The WCC properly applied the statute to the facts of this case.

¶17 We conclude the WCC had substantial credible evidence upon which to find Banco was "last injuriously exposed" at CDC to working conditions of the type and kind that led to her OD. Accordingly, we affirm its judgment that Liberty is not liable for Banco's OD.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT

9